**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **JOHN DOE I**, *et al.*, | ) | **CASE NO. 1:08 CV 220** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **MARC DANN,** | ) | <u>**Memorandum of Opinion and Order**</u> |
| **OHIO ATTORNEY GENERAL,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |


<u>**INTRODUCTION**</u>

This matter is before the Court on plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 2) and defendant Steve Sheldon's motion for leave to file an opposition thereto *instanter* (Doc. 134).  This is a putative class action brought pursuant to 42 U.S.C. § 1983 on behalf of sex offenders whose classification status was previously governed by Ohio's Megan's Law (H.B. 180) and whose classification status was changed on January 1, 2008 by Ohio's Adam Walsh Act (S.B. 10).  For the reasons that follow, plaintiffs' motion for a temporary restraining order is ruled MOOT and plaintiffs' motion for a preliminary injunction is DENIED.  Defendant Steve Sheldon's motion for leave is GRANTED.  The Agreed Order,

entered as an Order of this Court on February 5, 2008 (Doc. 16), is DISSOLVED.

**BACKGROUND**

Only that information necessary for resolution of the pending motion is set forth below. Unless otherwise stated, all information is taken from plaintiffs' Complaint.

Plaintiffs, John Doe I, John Doe II, John Doe III and John Doe IV are convicted sex offenders whose sex offender classification was previously governed by Ohio's Megan's Law (H.B. 180) and whose sex offender classification was changed as of January 1, 2008 by Ohio's Adam Walsh Act (S.B. 10) (hereinafter, the "AWA") codified at Ohio Rev. Code Ch. 2950. John Does I and II reside in Cuyahoga County.  Each was previously classified as a "sexually oriented offender" and has been reclassified by the Ohio Attorney General as a "Tier III Sex Offender."  John Doe III resides in Medina County, was previously classified as a sexually oriented offender, and has been reclassified by the Ohio Attorney General as a Tier II Sex Offender.  John Doe IV is incarcerated in Lorain County, resided in Seneca County prior to his incarceration, was previously found not to be a sex offender under Megan's Law, and has been classified by the Ohio Attorney General as a Tier III Sex Offender.  Defendants are the Ohio Attorney General ("AG") and the sheriffs of each of Ohio's 88 counties (the "Sheriff Defendants") (collectively, "defendants").

In 1994, New Jersey enacted "Megan's Law" after a young girl named Megan was sexually molested and killed by a repeat sexual offender who lived across the street from her family.  Smith v. Doe, 538 U.S. 84 (2003).  The federal legislature then followed with the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act.  *Id.*  The Jacob Wetterling Act required that all states enact registration and notification provisions or risk

2

losing federal funding.  *Id.*  What followed were enactments across the country of varying forms of Megan's Law.  *Id.*

Ohio has had some form of a sex offender registration statute since 1963.  *State v. Cook*, 83 Ohio St.3d 404, 406 (1998).  In 1996, the sex offender statute, Ohio Rev. Code Ch. 2950, was modified by House Bill 180 ("H.B. 180"), otherwise known as Ohio's Megan's Law.  *Id.* Megan's Law (effective July 1, 1997) modified existing sex offender classifications and registration requirements.  Megan's Law classified those who committed sexually oriented offenses as "sexually oriented offenders", "habitual sex offenders", and "sexual predators." Classification as a sexually oriented offender occurred by operation of law.  However, in certain circumstances, Megan's Law provided that before classifying an offender as a habitual sex offender or a sexual predator, the offender was provided a hearing.[1]  Megan's Law further provided the offender with the right to counsel at that hearing.

Plaintiffs state that under Megan's Law, to classify an offender as a habitual sex offender, the burden was on the State to demonstrate that the offender had previously been convicted of or pled guilty to a sexually oriented offense other than the offense in relation to which the hearing was being conducted.  Similarly, to classify an offender as a sexual predator under Megan's Law, the burden was on the State to prove by clear and convincing evidence that the offender was likely to commit future sex offenses.  These classification proceedings occurred as part of

---

[1]

> Plaintiffs contend that an offender was always provided a hearing before being classified as a habitual offender or a predator.  However, it appears that if an offender was "convicted of a violent sexually oriented offense and also of a specification alleging that he or she is a sexually violent predator" then the predator classification attached automatically.  *State v. Cook*, 83 Ohio St.3d 404, 407 (1998) (citing former Ohio Rev. Code §§ 2950.09(A), (B)(1) and (C)(2)).

3

the offender's criminal case.

Under Megan's Law, a sexually oriented offender was required to register with the sheriff in the counties of his/her residence, employment, and school annually for ten years.  A sexually oriented offender was not subject to "community notification" of this information; that is, the information a sexually oriented offender was required to provide to the sheriff was not shared with the public.  A habitual sex offender was required to register his or her addresses annually for 20 years and may or may not have been subject to community notification.  A sexual predator was required to register every 90 days for life and was subject to community notification.  For those offenders subject to community notification, the sheriff was required to provide all neighbors residing within 1,000 feet of the offender's residence (or all those living within the offender's building if he/she lived in a multi-unit building) with the following information:  the offender's name, address, offense of conviction, classification and photograph. The sheriff was also required to provide this same information to children's services agencies, schools, day-care facilities and law enforcement agencies within the same geographic area.[2]  An offender's failure to register and/or verify his or her address subjected the offender to felony criminal prosecution and further criminal penalties.

The Adam Walsh Act ("AWA"), enacted on June 30, 2007, amended Chapter 2950 of Ohio's Revised Code.  The amendments affected the classification scheme and the attendant address registration, community notification and residency restriction requirements.  The AWA

---

[2]

In 2003, Megan's Law was amended to include residency restrictions.  These restrictions prohibited all offenders convicted of sexually oriented offenses from living within 1,000 feet of a school. (S.B. 5)

now classifies offenders as "Tier I", "Tier II", and "Tier III."  An offender's classification now turns solely on the offense of conviction.  The offender's risk to the community and likelihood of re-offending are not taken into consideration.  The AWA classifies not only those convicted of sexually oriented crimes but also those who committed non-sexually oriented crimes against minors.

Title I of the federal AWA is entitled the Sex Offender Registration and Notification Act, or "SORN."  *United States v. Madera*, 2008 U.S. App. LEXIS 11078 (11th Cir. May 23, 2008). SORN requires each state to maintain a sex offender registry.  *Id.*  Pursuant to Ohio's enactment of the AWA, an offender classified in Tier I is required to register with the sheriff in the counties of his or her residence, employment, and school annually for 15 years.  A Tier II offender is required to register every 180 days for 25 years.  A Tier III offender is required to register every 90 days for life.  All offenders are now required to submit the following:  name, any aliases, social security number, date of birth, name and address of employer, name and address of school if any, photograph, copies of travel and immigration documents, license plate number for each vehicle owned, driven for work or regularly available to the offender, description of location where all such vehicles are stored, driver's license number or state ID number, description of each professional and occupational license, permit or registration held by the offender, and any email addresses, internet identifiers or telephone numbers registered to or used by the offender.

All Tier III offenders are also subject to community notification under the AWA. Moreover, all individuals convicted of a sexually oriented offense are now subject to expanded residency restrictions.  The new restrictions prohibit all offenders from residing within 1,000 feet of a school, preschool or day care facility.  The AWA also increases the penalties for failing to

5

register or verify one's address, providing for prison terms of up to ten years and mandatory minimum sentences in some cases.  The AWA applies retroactively to all offenders who had a duty to register under Megan's Law as of July 1, 2007.  The Sheriff Defendants are responsible for monitoring plaintiffs' compliance with the AWA and managing county-wide sex offender Internet databases.

Upon enactment of the AWA, the AG was tasked with reclassifying each offender into Tier I, II or III:

> the attorney general shall determine for each offender or delinquent child who prior to December 1, 2007, has registered a residence, school, institution of higher education, or place of employment address pursuant to section 2950.04, 2950.041, or 2950.05 of the Revised Code the offender's or delinquent child's new classification as a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender under Chapter 2950 of the Revised Code as it will exist under the changes that will be implemented on January 1, 2008, the offender's or delinquent child's duties under Chapter 2950 of the Revised Code as so changed, and, regarding a delinquent child, whether the child is a public registry-qualified juvenile offender registrant.

Ohio Rev. Code § 2950.031(A)(1).  The AWA also required the AG to provide notice of this reclassification to each offender via registered mail by December 1, 2007.  *Id.* at § 2950.031(A)(2).  On or about November 26, 2007, the AG sent a certified letter to each plaintiff informing them of their reclassification.  For those plaintiffs who are currently incarcerated, the AG delivered the letters to the institutions, where the letters were to be distributed by hand.  As of the time of the filing of the Complaint, numerous plaintiffs had failed to receive their reclassification letter.  Discovery in this matter reveals that some plaintiffs were reclassified multiple times and were mailed multiple reclassification letters.  Further, approximately 28% of

6

the letters mailed by the AG were returned with no confirmation of delivery.

While Megan's Law provided a hearing before an offender was placed in one of the two highest classification categories, the AWA provides for no hearing.  It only permits plaintiffs to challenge their reclassification after it has been made.  Plaintiffs must challenge their reclassification within 60 days of notice of the reclassification.  Ohio Rev. Code § 2950.031(E).  The petition to challenge the reclassification is to be filed in the Court of Common Pleas in the offender's county of residence.  *Id.*  The petition is to be served on the prosecutor of the county in which the petition is filed, who will represent the interests of the State.  *Id.*  The Rules of Civil Procedure apply "except to the extent that those Rules would by their nature be clearly inapplicable."  *Id.*  The offender must prove by clear and convincing evidence that the new registration requirements do not apply to him or her.  *Id.*  The new classification and its increased obligations remain in effect while the challenge is pending.  *Id.*  Plaintiffs must comply with their new classification even if they never receive notice of it from the AG.  If an offender does not file a petition with the 60-day period, he or she is "bound by the determinations of the attorney general contained in the registered letter."

Discovery conducted thus far indicates that, under Megan's Law, 77% of offenders were classified in the least restrictive category - "sexually oriented offender."  Four percent were classified as habitual offenders.  Half of these were subject to community notification.  And, 18% of offenders were labeled sexual predators or child-victim predators.  Under the AWA, 13% of all offenders have been placed in Tier I.  Tier II includes 33% of all offenders.  And, 54% have been classified as Tier III offenders.  Further, approximately 30% of these offenders will be subject to community notification under the AWA even though they were not subject to such

7

notification under Megan's Law.

Plaintiffs contend the litigation process by which they may contest application of the AWA is "vaguely defined" and has been "implemented inconsistently in the various counties of Ohio." If plaintiffs fail to challenge their registration status in the proper manner, they "face the risk of having procedurally defaulted their opportunity to challenge the AWA's application to themselves." The result, according to plaintiffs, is a denial of procedural due process. Plaintiffs assert that the AWA is both facially invalid and unconstitutional as applied.

In support of their argument, plaintiffs point out that the reclassification letters did not define "county of residence", did not indicate whether the petition should be filed as a criminal or civil matter, did not indicate whether the petition should be filed under a plaintiff's original criminal case number or as a new case, and did not specify the types of challenges that may be raised in such petitions. Some county prosecutors have argued that constitutional challenges to the application of the AWA may not be raised in petitions challenging reclassification.[3] While the reclassification letters advised those offenders who were facing community notification for the first time that a court "may make a determination that removes this requirement", the letters do not inform offenders they must affirmatively seek this relief or how to do so.

Plaintiffs also state that the procedures applied in the challenge proceedings to date have varied from county to county.[4] Some counties have required the petition to be filed as a new

---

[3]

      The AG's Counterclaim asserts that claims challenging the constitutionality of the AWA are not to be joined with petitions challenging reclassification and are not to be filed under a plaintiff's previous criminal case number.

[4]

      The Court takes this allegation from plaintiffs' Complaint. The

civil action.  Filing fees vary from $0 to $250.  Other counties have accepted the petitions when filed in the original criminal case.  The AWA does not expressly provide a right to counsel during the petition process.  Some counties have appointed counsel for indigent offenders, others have not.  The process by which these petitions are assigned to judges has also varied.  Some counties provide for the random assignment of petitions challenging reclassification.  Others provide that the petition should be assigned to the judge who handled the original criminal case.  Still others have assigned all petitions to a single judge.  Plaintiffs finally maintain that it is unclear in which county incarcerated individuals are to file their petitions; the AWA does not define the term "county of residence."

Plaintiffs also argue that many offenders have been improperly reclassified by the AG. Plaintiffs' supplemental brief in support of their motion for a preliminary injunction states that the most common misclassified offenses include unlawful sexual conduct with a minor, gross sexual imposition, abduction, kidnapping and offenses that may or may not carry "sexual motivation specifications."  These offenses, according to plaintiffs, "account for almost 50% of all registered sex offenders."

Plaintiffs seek "relief necessary to ensure meaningful access to the Ohio courts so that the individual applications of the Adam Walsh Act ("AWA") to plaintiffs may be adjudicated in a timely and effective manner."  Plaintiffs' argue that procedural due process requires that plaintiffs "have a meaningful opportunity to challenge their proposed new classification and

---

affidavit submitted by Attorney Sweeney with plaintiffs' briefing admits that it is not wholly based on personal knowledge and does not indicate which statements are based on such knowledge. Therefore, the Court will not consider it as admissible evidence.

duties at a hearing with counsel before their new classifications and duties go into effect."
Plaintiffs seek injunctive and, ultimately, declaratory relief to "prevent the application of the
AWA to them until such time as they are afforded individual reclassification hearings that
comport with due process."

Plaintiffs' Complaint asserts a single cause of action alleging violation of the Due
Process Clause of the Fourteenth Amendment to the United States Constitution.  Defendants
counterclaim for a declaratory judgment that the AWA is not unconstitutional.  Plaintiffs moved
for a temporary restraining order ("TRO") and a preliminary injunction ("PI").  Defendants were
given notice of the motion.  The AG submitted a brief in opposition.  Plaintiffs agreed to forego
an immediate ruling on the motion for TRO while the parties attempted to negotiate a stipulated
order.  The parties did in fact reach agreement and that agreement was entered as an Agreed
Order of this Court on February 5, 2008 ("Agreed Order").  (Doc. 16)  The Agreed Order has
been in place since that time and the parties have been given the opportunity to conduct limited
discovery and supplement their briefing on the motion for preliminary injunction.

Via their supplemental brief, plaintiffs ask the Court to grant the following relief:  (1)
suspend the 60-day deadline, set forth in Ohio Rev. Code §§ 2950.031(E) and 2950.032(E), for
filing petitions challenging the application of the AWA as provided in Paragraph 3 of the Agreed
Order; (2) stay the community notification provisions as provided in Paragraphs 4-6 of the
Agreed Order; and (3) order that putative class members register as provided by Megan's Law
and not the AWA.  The AG has filed a supplemental opposition on behalf of himself and Sheriffs
Fred Thompson, Ralph D. Fizer, Jr., David L. Smith, Randy Thorp, Tim Bailey, Jeff Grey,
Steven R. Brenneman, Robery Stephenson, Duane Kaley, Doug W. Schlagetter, Drew Alexander

10

and Walt Wilson.  The following sheriff defendants joined in the AG's opposition:  David

Deskins, Eugene Fischer, James A. Telb, Dave Vore, Randall Wellington and Steve Sheldon.[5]

Sheriffs Simon L. Leis, Jr. and the County Sheriff Defendants[6] joined in the AG's opposition and

also made further arguments of their own.  The motion for preliminary injunction is now ripe for

decision.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions.

"When considering a motion for a preliminary injunction, the district court should consider four

factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the

movant would suffer irreparable injury without the injunction; (3) whether issuance of the

injunction would cause substantial harm to others; and (4) whether the public interest would be

served by issuance of the injunction."  *Rock and Roll Hall of Fame and Museum, Inc. v. Gentile

Productions*, 134 F.3d 749, 753 (6th Cir. 1998); *see also Memphis Planned Parenthood, Inc. v.

Sundquist*, 175 F.3d 456, 460 (6th Cir. 1999).

These four considerations are factors to be balanced, not prerequisites that must be met.

*E.g., McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997).

Not all of the factors need be fully established for an injunction to be proper. *Michigan State*

---

[5]

Defendant Steve Sheldon inadvertently missed the deadline for filing
his opposition to the motion for preliminary injunction.  He moves
for leave to file *instanter*.  His motion for leave (Doc. 134) is hereby
granted.

[6]

The County Sheriff Defendants are those who have agreed to be
collectively represented by the Cuyahoga County Prosecutor's
Office.  *See* Doc. 33.

*AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997).  However, a district court must make specific findings concerning each of these factors, unless fewer factors are dispositive of the issue.  *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997).  And, while none of the factors are given controlling weight, a preliminary injunction shall not issue where there is no likelihood of success on the merits.  *Michigan State AFL-CIO*, 103 F.3d at 1249.

<u>**DISCUSSION**</u>

Plaintiffs contend that procedural due process requires that they receive a hearing to challenge their reclassification before they are to be subject to the heightened obligations and duties imposed by the AWA.

**Likelihood of Success on the Merits**

The Fourteenth Amendment to the United States Constitution provides in part that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law ..."  Claims that allege a violation of procedural due process are evaluated under a two-part analysis.  "First, the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment.  Only after identifying such a right [does the court] continue to consider whether the deprivation of that interest contravened notions of due process."  *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002).

"The procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit':  'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.'"  *Town of Castle Rock v. Gonzales*,

12

545 U.S. 748, 756 (2005) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); *see also, e.g., Castle Rock*, 545 U.S. at 756. Such property and liberty interests that arise out of state law "attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law." *Paul v. Davis*, 424 U.S. 693, 710 (1976). "[T]he procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status." *Id.* at 711. In deciding whether an interest is protected by the due process clause, the court must look to the nature of the interest not its importance to plaintiffs. *Roth*, 408 U.S. at 571 (holding a non-tenured professor had no protected interest in his position such that he must be afforded a hearing before the university determines not to re-hire him for an additional year).

Plaintiffs assert that there are several liberty and property interests at stake here: (1) putative class members have a protected property and liberty interest in their "present classification and associated burdens and obligations which were the product of a prior judicial determination"; and (2) putative class members' liberty interest is implicated in that the Act "stigmatizes" plaintiffs and imposes "severe restraints on their liberty including, among other things, restrictions on where they can live."

Ohio has had some form of a sex offender registration statute since 1963. *State v. Cook*, 83 Ohio St.3d 404, 406 (1998). In 1996, the sex offender statute, Ohio Rev. Code Ch. 2950, was modified by Megan's Law. *Id.* Megan's Law established a new classification system for

13

convicted sex offenders.  *Id.*  Megan's Law also established registration requirements under which offenders were required to register their address and other information with their local sheriff.  *Id.* at 408.  These requirements applied to all offenders sentenced on or after the effective date of the law, regardless of when the offense occurred.  *Id.*  Registration also applied to those offenders who were habitual sex offenders immediately before the effective date.  *Id.*  Several years later, Megan's Law was amended to add residency restrictions.  S.B. 5 (2003).

All "statutes enjoy a strong presumption of constitutionality."  *Id.* at 409.  Before a court may declare an enactment of the General Assembly unconstitutional, "it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible."  *Id.*  In other words, the presumption of validity "cannot be overcome unless it appear[s] that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution."  *Id.*  While the exact issue presented to this Court does not appear to have been decided by any higher court, several decisions interpreting various states' versions of Megan's Law and the AWA are instructive.

First, the United States Supreme Court has held that public disclosure of a state's sex offender registry without a hearing as to whether an offender is "currently dangerous" does not offend due process where the law required an offender to be registered based on the fact of his conviction alone.  *Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1 (2003) (considering Connecticut's version of Megan's Law).  Plaintiff, an offender, charged that the law deprived him of a liberty interest in "his reputation combined with the alteration of his status under state law."  The court declined to decide whether or not a liberty interest was implicated.  The court held that "even assuming, arguendo, that [the offender] has been deprived of a liberty interest,

14

due process does not entitle him to a hearing to establish a fact (current dangerousness) that is not material" under the statute.  538 U.S. at 7.  The court concluded that plaintiffs "who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme."  As explained above, Ohio's AWA does not base an offender's tier classification on any determination of current dangerousness.  Instead, the classification is based on the fact of his conviction alone.  Thus, *Connecticut v. Doe* appears to support a finding that plaintiffs are not likely to succeed in showing they are entitled to a hearing before being reclassified.

The Court also finds the Supreme Court of Ohio's decision in *State v. Hayden* instructive. In *Hayden*, the court had cause to consider the then new Megan's Law.  The court held that classification of an offender as a "sexually oriented offender" without a hearing did not deprive the offender of any protected liberty or property interest.  *State v. Hayden*, 96 Ohio St.3d 211 (2002).  The offender had pled guilty to attempted rape in 1984 (prior to the enactment of Megan's Law).  He was sentenced to five to 15 years in prison.  In 1999, as a result of changes enacted as a part of Megan's law, the offender was classified as a "sexually oriented offender." This classification was based solely on the fact of his conviction.  As a result of this classification, he was required to register his address with his local sheriff.  The offender contended that procedural due process required he be given a hearing before he could be classified as a "sexually oriented offender" and, thus, be subject to the address registration requirement.[7]  The Ohio Supreme Court disagreed:  "Neither the Due Process Clause of the

---

[7] The offender also argued that the law violated the confrontation clause. The court disagreed, following *State v. Cook*, which held that the scheme provided for in Chapter 2950 is civil, not punitive in

Fourteenth Amendment to the United States Constitution nor the analogous clause in Ohio's

Constitution, Section 16, Article I, requires a hearing in this case."

The *Hayden* court found that "[a]ppellee has not shown that he was deprived of a

protected liberty or property interest as a result of the registration requirement imposed without a

hearing" defining a constitutionally protected liberty interest as "freedom from bodily restraint

and punishment."  The court concluded:

> [A]ffording appellee a hearing under these facts would be nothing
> more than an empty exercise. The point of such a hearing would be
> to determine whether appellee committed a sexually oriented offense.
> What evidence could appellee possibly present that would justify a
> finding that he is not? The fact of his conviction of attempted rape is
> established. When he was convicted of that crime, which is a sexually
> oriented offense under R.C. 2950.01(D)(1)(g), appellee was
> automatically classified as a sexually oriented offender and therefore
> must register with the sheriff of the county in which he resides as
> prescribed by R.C. 2950.04(A)(2). In *State v. Cook* [], we held that
> "the registration and address verification provisions of R.C. Chapter
> 2950 are *de minimis* procedural requirements that are necessary to
> achieve the goals of R.C. Chapter 2950."
> ***
> The dissent [from the court of appeals' decision] noted that appellee's
> conviction for a sexually oriented offense automatically conferred on
> him the status of a sexually oriented offender. Thus, the dissent
> explained, "what follows--the registration requirement--is mandated
> by law. The trial court cannot 'determine' anything. It merely
> engages in the ministerial act of rubber-stamping the registration
> requirement on the offender." We agree with the dissent.
>
> Yet, appellee argues that defendants should have the opportunity for
> a hearing to avoid the possibility of mistakes, for instance such as the
> misidentification of the offender or offense. However, we note that
> appellee has not alleged that any particular mistake has occurred
> here. Thus, we find this argument to be pure conjecture. Even if such
> an error did arise, legal remedies such as mandamus are available to
> correct such an error.

---

nature.

16

> Accordingly, we hold that the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and of Section 16, Article I of the Ohio Constitution do not require a trial court to conduct a hearing to determine whether a defendant is a sexually oriented offender. Instead, according to R.C. Chapter 2950, if a defendant has been convicted of a sexually oriented offense as defined in R.C. 2950.01(D) and is neither a habitual sex offender nor a sexual predator, the sexually oriented offender designation attaches as a matter of law.

*Hayden*, 96 Ohio St.3d at 214-15.

*Hayden* directly addresses many of plaintiffs' claims in the current action.  Plaintiffs argue that they must be granted a hearing before reclassification given the risk that many of them have been reclassified.[8]  However, *Hayden* makes clear that a post-classification hearing such as mandamus would suffice.  By this reasoning, the post-reclassification petition procedure detailed by the AWA would seem to suffice as well.

The Sixth Circuit has also had occasion to consider a law similar to Ohio's AWA.  In *Cutshall v. Sundquist*, the Sixth Circuit held that Tennessee's sex offender registration and notification law did not offend procedural due process.  *Cutshall v. Sundquist*, 193 F.3d 466 (1999).  The offender alleged that the notification provisions of the law infringed upon his liberty interest because it imposed punishment and subjected him to stigmatization and loss of employment.  The Sixth Circuit concluded that no liberty interest was implicated, because the law "involved no physical restraint" and "imposed no punishment."  The court also stated that, as to the offender's alleged interest in his reputation, "only where the stigma of damage to a reputation is coupled with another interest, such as employment, is procedural due process

---

[8] Plaintiffs assert that as many as 50% of them have been misclassified, but no evidence is submitted in support of this contention.

17

protection triggered." *Cutshall*, 193 F.3d at 479 (citing *Paul v. Davis*).  The court then held that a "charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation."  Finally, the court held that the offender had "failed to establish that the Act infringes any constitutionally protected liberty or property interest in employment or privacy.  Without more, his claim that the Act damages his reputation must also fail.  Without the "plus" factor of employment or privacy, [the offender] has failed to satisfy the stigma-plus test of *Paul*.  Therefore, he is not entitled to any procedural protections under the Due Process Clause."

Further support can be found in a more recent Sixth Circuit opinion.  In relying on *Connecticut v. Doe*, the Sixth Circuit held that "[p]rocedural due process challenges to state sex-offender registry statutes that mandate the registration of all convicted sex offenders have been foreclosed by [*Connecticut*]."  *Doe v. Michigan Dept. of State Police*, 490 F.3d 491, 502 (6th Cir. 2007) (also stating "*[a]ny* challenge to [Michigan's sex offender registration act, which requires the registration of all offenders] that sounds in procedural due process is therefore foreclosed") (emphasis added); *see also Fullmer v. Michigan Dept. of State Police*, 360 F.3d 579 (6th Cir. 2004) (same).  "The Supreme Court held that procedural due process does not entitle an individual convicted of a sex offense to a hearing to determine whether he or she is sufficiently dangerous to be included in the state's convicted sex-offender registry where the statute requires the registration of all sex offenders."  *Doe v. Michigan*, 490 F.3d at 502 (holding charge of violation of liberty interest in reputation under "stigma plus" test was also foreclosed, as this is merely one type of procedural due process claim).

Under the reasoning of *Hayden* and *Cutshall*, the Court finds that plaintiffs have no

18

likelihood of success in demonstrating a constitutionally protected liberty or property interest in

avoiding their new classifications and obligations in so far as those obligations relate to mere

address registration.[9]

As to community notification, the Court finds similarly that plaintiffs have no protected

interest in keeping the fact of their convictions and addresses private.  As the Supreme Court of

Ohio has stated:

> This court is not blind to the effects of the notification provisions of R.C. Chapter 2950. Offenders may become ostracized from society and even experience harassment. However, "an allegation that government dissemination of information or government defamation has caused damage to reputation, even with all the attendant emotional anguish and social stigma, does not in itself state a cause of action for violation of a constitutional right; infringement of more 'tangible interests' must be alleged as well." Further, "the harsh consequences [of] classification and community notification ... come not as a direct result of the sexual offender law, but instead as a direct societal consequence of [the offender's] past actions."
>
> As to the dissemination of information regarding the offender's status, a conviction has always been public record. The General Assembly struck a balance between the privacy expectations of the offender and the paramount governmental interest in protecting members of the public from sex offenders. We cannot conclude that the Retroactivity Clause bans the compilation and  dissemination of truthful information that will aid in public safety. In addition, this dissemination requirement imposes no burden on the defendant; the duty to notify the community applies only to the sheriff with whom the defendant has most recently registered.

---

[9]

> The Supreme Court has noted that the "purpose and principal effect of [passive] notification [via the Internet] are to inform the public for its own safety, not to humiliate the offender. … [T]he attendant humiliation is but a collateral consequence of a valid regulation." *Smith v. Doe*, 538 U.S. at 99 (considering at great length whether the effects of Alaska's Megan's Law were punitive and finding they were not).

19

> Thus, we conclude that these dissemination provisions do not impinge on any reasonable expectation of finality defendant may have had with regard to his conviction for gross sexual imposition, and that he, therefore, had no substantive right in this regard. Consequently, the General Assembly could permissibly impose these additional obligations without infringing on a substantive right. Therefore, the notification provisions of R.C. Chapter 2950 do not violate the prohibition in Section 28, Article II against retroactive laws. To hold otherwise would be "to find that society is unable to protect itself from sexual predators by adopting the simple remedy of informing the public of their presence."

*Cook*, 83 Ohio St.3d at 413-14 (discussing whether Megan's Law offended the Ohio Constitution's prohibition on retroactive laws) (internal citations omitted).

Finally, the Court addresses the residency restrictions of the AWA.  Only weeks ago, the Ohio Supreme Court ruled that Ohio Rev. Code 2950.031 - the provision that embodied Megan's Law's residency restriction prohibiting certain offenders from living within 1,000 feet of a school - cannot be applied to an offender who purchased his home and committed his offense before the effective date of the statute.  *Hyle v. Porter*, 117 Ohio St.3d 165 (2008).  The restriction at issue stated:  "No person who has been convicted of, is convicted of, has pleaded guilty to, or pleads guilty to either a sexually oriented offense that is not a registration-exempt sexually oriented offense or a child-victim oriented offense shall establish a residence or occupy residential premises within one thousand feet of any school premises."  The offender had lived in his house since 1991.  He was convicted in 1995 and was classified as a sexually oriented offender.

A statute is presumed to be prospective in operation unless expressly made retroactive. *Hyle*,117 Ohio St.3d 165.  Further, in Ohio, the "general assembly shall have no power to pass retroactive laws" that "impair[] vested substantive rights."  However, a retroactive statute that is

20

"merely remedial in nature" is not unconstitutional.  If a statute "is silent on the question of its retroactive application, [the court] must apply it prospectively only."  The court concluded that the statutory language was ambiguous and, therefore, did not "clearly proclaim" - as it must - the legislature's intent to make the act retroactive.  Because the act was not made retroactive, the court did not address whether it would be constitutional to apply it so.

The residency restrictions in the AWA do not differ in any relevant way from those in Megan's Law:  "No person who has been convicted of, is convicted of, has pleaded guilty to, or pleads guilty to a sexually oriented offense or a child-victim oriented offense shall establish a residence or occupy residential premises within one thousand feet of any school premises or preschool or child day-care center premises."  Ohio Rev. Code § 2950.034.  This portion of the AWA contains no retroactive language (such as, "regardless of when the offense was committed") so as to make the AWA residency restriction retroactive in application.

Plaintiffs, in their reply brief, assert that assuming the *Hyle* decision "applies with equal force to the 2008 residency restrictions enacted by Senate Bill 10, that would simply protect plaintiffs from the expanded scope of the restrictions ... Most plaintiffs would still, by virtue of their reclassification, suffer from an expanded duration of residency restrictions."  Plaintiff does not direct the Court to any section of the AWA that supports this assertion.  As stated above, the AWA's residency restrictions do not appear to apply retroactively.  By definition, then, they do not appear to apply to plaintiffs, who were all convicted before the AWA went into effect.  On the authority of *Hyle*, then, this Court finds that plaintiffs are not likely to succeed on a showing that the residency restrictions of the AWA deprive them of a protected property or liberty interest.

21

Because the Court concludes that plaintiffs have not demonstrated they have been deprived of a constitutionally protected property or liberty interest, the Court declines to address what process might be due to prevent deprivation of such an interest.  Furthermore, because the plaintiffs have failed to demonstrate likelihood of success on the merits, the Court will not address the remaining three factors relevant to a preliminary injunction determination.  *Michigan State AFL-CIO*, 103 F.3d at 1249.[10]

### **CONCLUSION**

For the foregoing reasons, plaintiffs' motion for a temporary injunction is ruled MOOT and plaintiffs' motion for a preliminary injunction is DENIED.  Defendant Steve Sheldon's motion for leave is GRANTED.  The Agreed Order, entered as an Order of this Court on February 5, 2008, is DISSOLVED.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 6/9/08

---

[10]

Plaintiffs assert that the degree of likelihood of success necessary diminishes the greater the showing of irreparable harm.  *In re Eagle-Pitcher*, 963 F.2d 855 (6th Cir. 1992).  It appears that this statement was first made by the Sixth Circuit in the context of an "alternate" test for granting a preliminary injunction, a test applied by the Second Circuit.  In any event, because this Court finds no likelihood of success, it need not address whether plaintiffs will be irreparably harmed.

22