**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN DOE I,** *et al.*, | ) | **CASE NO. 1:08 CV 220** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **MARC DANN,** | ) | **Memorandum of Opinion and Order** |
| **OHIO ATTORNEY GENERAL,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**INTRODUCTION**

This matter is before the Court on the Sheriff Defendants' motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) (Docs. 130, 131, 132, 133, 135, 137, 138, 139, 143, 144 and 145) and plaintiffs' motions to dismiss defendants' counterclaim pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Docs. 87 and 105). This is a putative class action brought pursuant to 42 U.S.C. § 1983 on behalf of sex offenders whose classification status was previously governed by Ohio's Megan's Law (H.B. 180) and whose classification status was changed on January 1, 2008 by Ohio's Adam Walsh Act (S.B. 10). For the reasons that follow, defendants' motions for judgment on the pleadings are GRANTED and plaintiffs' motions to dismiss are GRANTED.

**FACTS**

Only that information necessary for resolution of the pending motions is set forth below. Unless otherwise stated, all information is taken from plaintiffs' Complaint.

Plaintiffs, John Doe I, John Doe II, John Doe III and John Doe IV are convicted sex offenders whose sex offender classification was previously governed by Ohio's Megan's Law (H.B. 180) and whose sex offender classification was changed as of January 1, 2008 by Ohio's Adam Walsh Act (S.B. 10) (hereinafter, the "AWA") codified at Ohio Rev. Code Ch. 2950. Defendants are the Ohio Attorney General ("AG") and the sheriffs of each of Ohio's 88 counties (the "Sheriff Defendants") (collectively, "defendants").

Ohio has had some form of a sex offender registration statute since 1963. *State v. Cook*, 83 Ohio St.3d 404, 406 (1998). In 1996, the sex offender statute, Ohio Rev. Code Ch. 2950, was modified by House Bill 180 ("H.B. 180"), otherwise known as Ohio's Megan's Law. *Id.* Megan's Law (effective July 1, 1997) modified existing sex offender classifications and registration requirements. In 2003, Megan's Law was amended to include residency restrictions. (S.B. 5)

The Adam Walsh Act ("AWA"), enacted on June 30, 2007, amended Chapter 2950 of Ohio's Revised Code. (S.B.10) The amendments affected the classification scheme and the attendant registration, community notification and residency restriction requirements. An offender's classification now turns solely on the offense of conviction. The offender's risk to the community and likelihood of re-offending are not taken into consideration.

Offenders are required to periodically register their address and other information with the sheriff in the counties of his or her residence, employment and school. Under the AWA,

2

offenders must provide more information than required under Megan's Law and offenders must register more frequently and for longer periods of time.  Certain offenders are also now subject to community notification under the AWA.  Moreover, all individuals convicted of a sexually oriented offense are now subject to expanded residency restrictions.  The new restrictions prohibit all offenders from residing within 1,000 feet of a school, preschool or day care facility.  The AWA applies retroactively to all offenders who had a duty to register under Megan's Law as of July 1, 2007.  The Sheriff Defendants are responsible for monitoring plaintiffs' compliance with the AWA and managing county-wide sex offender Internet databases.

Upon enactment of the AWA, the AG was tasked with reclassifying each offender:

> the attorney general shall determine for each offender or delinquent child who prior to December 1, 2007, has registered a residence, school, institution of higher education, or place of employment address pursuant to section 2950.04, 2950.041, or 2950.05 of the Revised Code the offender's or delinquent child's new classification as a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender under Chapter 2950 of the Revised Code as it will exist under the changes that will be implemented on January 1, 2008, the offender's or delinquent child's duties under Chapter 2950 of the Revised Code as so changed, and, regarding a delinquent child, whether the child is a public registry-qualified juvenile offender registrant.

Ohio Rev. Code § 2950.031(A)(1).  The AWA also required the AG to provide notice of this reclassification to each offender via registered mail by December 1, 2007.  *Id.* at § 2950.031(A)(2).  On or about November 26, 2007, the AG sent a certified letter to each plaintiff informing them of their reclassification.

While Megan's Law provided a hearing before an offender was placed in one of the two highest classification categories, the AWA provides for no hearing.  It only permits plaintiffs to

challenge their reclassification after it has been made. Plaintiffs must challenge their reclassification within 60 days of notice of the reclassification. Ohio Rev. Code § 2950.031(E). The petition to challenge the reclassification is to be filed in the Court of Common Pleas in the offender's county of residence. *Id.* The petition is to be served on the prosecutor of the county in which the petition is filed, who will represent the interests of the State. *Id.* The Rules of Civil Procedure apply "except to the extent that those Rules would by their nature be clearly inapplicable." *Id.* The offender must prove by clear and convincing evidence that the new registration requirements do not apply to him or her. *Id.* The new classification and its increased obligations remain in effect while the challenge is pending. *Id.* Plaintiffs must comply with their new classification even if they never receive notice of it from the AG. If an offender does not file a petition with the 60-day period, he or she is "bound by the determinations of the attorney general contained in the registered letter."

Plaintiffs seek "relief necessary to ensure meaningful access to the Ohio courts so that the individual applications of the Adam Walsh Act ("AWA") to plaintiffs may be adjudicated in a timely and effective manner." Plaintiffs' argue that procedural due process requires that plaintiffs "have a meaningful opportunity to challenge their proposed new classification and duties at a hearing with counsel before their new classifications and duties go into effect." Plaintiffs seek injunctive and, ultimately, declaratory relief to "prevent the application of the AWA to them until such time as they are afforded individual reclassification hearings that comport with due process."

Plaintiffs' Complaint asserts a single cause of action alleging violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Defendants

4

counterclaim for a declaratory judgment that the AWA is not unconstitutional in all respects. This Court previously denied plaintiffs' motion for a preliminary injunction. (Doc. 146) The Sheriff Defendants have now moved for judgment on the pleadings. Plaintiffs have moved to dismiss defendants' Counterclaim. Each of the motions is opposed.

**STANDARD OF REVIEW**

*Rule 12(c)*

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is judged under the same standard of review as a Rule 12(b)(6) motion. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001); *see also Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987). Thus, the district court must accept all of the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff. *Ziegler*, 249 F.3d at 511-12; *see also Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999). When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997). However, the complaint must contain "more than the bare assertion of legal conclusions." *In Re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993). "In practice, a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Id.* (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)) (emphasis in original).

*Rule 12(b)(1)*

When a court's subject matter jurisdiction is challenged under Rule 12(b)(1) of the

Federal Rules of Civil Procedure, the party seeking to invoke jurisdiction bears the burden of proof.  *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).  A 12(b)(1) motion to dismiss may constitute either a facial attack or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Facial attacks question the sufficiency of the jurisdictional allegations in the complaint.  *Id*.  Thus, those allegations must be taken as true and construed in the light most favorable to the nonmoving party.  *Id*.  Factual attacks, however, challenge the actual fact of the court's jurisdiction.  *Id*.  In such cases, the court is free to weigh any evidence properly before it to satisfy itself as to the existence of its power to hear the case.  *Id.*; *see also Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

*Rule 12(b)(6)*

When considering a motion to dismiss pursuant to Rule 12(b)(6), the district court must accept all of the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff.  *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999).  When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997).  However, the complaint must contain "more than the bare assertion of legal conclusions."  *In Re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).  "In practice, a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory."  *Id.* (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)) (emphasis in original).

**DISCUSSION**

*The Sheriff Defendants' Motions for Judgment on the Pleadings*

The Sheriff Defendants make two arguments in their motions for judgment on the pleadings.[1] First, they argue that plaintiffs' procedural due process claim is directed solely to the Ohio Attorney General (the "AG"). That is, plaintiffs complain that the notice they were provided by the AG regarding their reclassification and the fact that they were reclassified by him without a prior opportunity to be heard violated their procedural due process rights. Because these allegations are directed to only the AG and because the AWA places the responsibility on the AG for reclassification and giving notice thereof, the Sheriff Defendants argue that plaintiffs cannot state a claim for relief against them. The Sheriff Defendants also argue that even if plaintiffs' Complaint is construed to be a challenge to the actual process of registering offenders' addresses and providing community notification - the portion of enforcement of the AWA handled by the Sheriff Defendants rather than the AG - this challenge must also fail for the same reasons plaintiffs' motion for a preliminary injunction failed.

Plaintiffs for their part acknowledge that "should this Court adhere to its position that the plaintiffs have not alleged either a liberty or property interest sufficient to trigger a procedural due process analysis then the plaintiffs' recognize that the County Sheriff Defendants' motion will likely be granted." Pl. Opp. at 2 (referring to this Court's Order denying plaintiffs' motion for preliminary injunction (Doc. 146)). Plaintiffs, however, go on to argue that they have in fact

---

[1]
> A number of the Sheriff Defendants are represented collectively by the Assistant Prosecuting Attorneys. These defendants filed the leading brief in support of the motions for judgment on the pleadings. (Doc. 130) The other Sheriff Defendants simply incorporated the arguments made into their own motions. Accordingly, the various motions for judgment on the pleadings will be treated collectively.

alleged "at least two protected property interests ... in this case: the first is that created by the plaintiffs' judicial classification under Ohio's former sex offender registry law, the second is the increased registration fee that the plaintiffs must pay on an annual basis as a result of their reclassification." Plaintiffs argue that for those of them who were granted a judicial hearing under Megan's Law as to the likelihood they would re-offend, these plaintiffs have a protected property interest. Plaintiffs also state that "it seems elementary" that they have a protected property interest in "their own money," a property interest that is infringed by the fact that they have to pay a fee each time they register and that registration occurs more frequently and for a greater number of years under the AWA.

The Sheriff Defendants respond that the Complaint does not allege these protected property interests. The Complaint alleges only that "plaintiffs have a constitutionally protected liberty interest in their present classification and associated burdens and obligations." The Complaint does not allege any protected *property* interest, much less the specific interests now alleged including the payment of the annual registration fee.

The Court agrees with the Sheriff Defendants that plaintiffs are essentially re-arguing their motion for preliminary injunction and attempting to more effectively make those arguments. Almost all of plaintiffs' opposition to the motions for judgment on the pleadings is dedicated to whether or not plaintiffs can show a protected interest.

In any event, plaintiffs' allegations are not directed to the Sheriff Defendants. The Sheriff Defendants were not involved in creating the notice sent by the AG to plaintiffs in November 2007. The Sheriff Defendants were not involved in reclassification of the plaintiffs under the AWA. Of the named defendants, only the AG took part in reclassification. In short,

plaintiffs fail to state a claim for a violation of their procedural due process rights against the Sheriff Defendants.

Plaintiffs argument that "the Sheriff Defendants' statutory duties are at the very crux of the plaintiffs' claims" does not persuade the Court to find otherwise. Pl. Opp. at 6. As plaintiffs themselves state in the very next sentence of their brief: "Admittedly, the plaintiffs' claims stem from a constitutionally infirm reclassification process." The fact that the Sheriff Defendants are "responsible for registering and verifying the addresses of plaintiffs" and "distributing expanded community notification" does not render them potentially liable for the allegedly infirm notice and reclassification process itself.

The Sheriff Defendants' motions for judgment on the pleadings are granted.

*Plaintiffs' Motions to Dismiss Defendants' Counterclaim*

Plaintiffs move to dismiss defendants' Counterclaim pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to 12(b)(6) for failure to state a claim.[2]

Plaintiffs' primary complaint is that they have asserted a very narrow challenge to three specific

---

[2]

> The first motion (Doc. 87) is directed to the Counterclaim asserted by defendants Marc Dann, James A. Telb, Dave Vore and Steve Sheldon (the "Dann Defendants"). The second motion (Doc. 105) is directed to the Counterclaim asserted by defendants Fred Thompson, Ralph D. Fizer, Jr., David L. Smith, Randy Thorp, Tim Bailey, Jeff Grey, Steven R. Brenneman, Robert Stephenson, Duane Kaley, Doug W. Schlagetter (formerly Kevin O'Leary), Drew Alexander and Walt Wilson (the "Thompson Defendants" and, together with the Dann Defendants, the "Counterclaim Defendants"). The Counterclaim asserted by the Thompson Defendants simply incorporates the Counterclaim previously filed by the Dann Defendants. Thus, the Counterclaims filed by the Dann and Thompson Defendants will be treated together and be collectively referred to as "the Counterclaim." Plaintiffs two motions to dismiss and the memoranda in support are also identical and will be treated together.

sections of the AWA on a single constitutional ground.  However, the Counterclaim is all-encompassing.  It seeks a declaration that the entire AWA is constitutional and valid on every conceivable ground under the United States Constitution, the Ohio Constitution and the laws of Ohio.  The Counterclaim Defendants argue that it will be more efficient to resolve every possible challenge here and now, especially because some (but certainly not all) of these challenges have already been raised in the state courts.

The Counterclaim states that more than 1,000 individual actions challenging the constitutionality of the AWA have been filed in the Ohio courts.  The Counterclaim Defendants allege that:

> Taken together, the constitutional challenges brought against S.B. 10 [the AWA] by the members of the putative class include virtually all conceivable claims that the legislation is constitutionally infirm under both the Ohio and United States Constitution.
>
> The constitutional challenges brought against S.B. 10 include allegations that S.B. 10 violates provisions of the United States Constitution regarding substantive and procedural due process, equal protection, ex-post facto laws, bills of attainder, double jeopardy, impairment of contracts, the Tenth Amendment, and other claims.
>
> The constitutional challenges brought against S.B. 10 include allegations that S.B. 10 violates provisions of the Ohio Constitution and Ohio state law regarding substantive and procedural due process, equal protection, retroactive laws, double jeopardy, contracts, inalienable rights, separation of powers, single-subject, and other claims.

Counterclaim at 10 (Doc. 77).  The Counterclaim Defendants further allege that co-counsel for plaintiffs have filed two other purported class action suits in the Ohio courts asserting constitutional challenges to the AWA.

The Counterclaim alleges that this Court has subject matter jurisdiction over the claims

10

relating to the United States Constitution pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.  The Counterclaim further alleges that this Court has ancillary jurisdiction over the claims relating to the Ohio Constitution under this same statute.

The Counterclaim seeks a "declaration that S.B. 10 is constitutionally sound pursuant to 28 U.S.C. § 2201."  More specifically, the Counterclaim seeks:

> B. An Order pursuant to 28 U.S.C. §2201 declaring that S.B. 10 does not violate any provision of the United States Constitution, including explicit declarations as follows:
>
> i. S.B. 10 does not violate procedural due process as guaranteed by the United States Constitution;
>
> ii. S.B. 10 does not violate substantive due process as guaranteed by the United States Constitution;
>
> iii. S.B. 10 does not violate equal protection guaranteed by the United States Constitution;
>
> iv. S.B. 10 does not violate the separation of powers as guaranteed by the United States Constitution;
>
> v. S.B. 10 does not violate the United States Constitution's prohibition on ex post facto laws;
>
> vi. S.B. 10 does not violate the United States Constitution's prohibition on bills of attainder;
>
> vii. S.B. 10 does not violate the United States Constitution's prohibition on double jeopardy;
>
> viii. S.B. 10 does not violate the United States Constitution's prohibition on impairment of contracts;
>
> ix. S.B. 10 does not violate the Tenth Amendment to the United States Constitution, and;
>
> x. S.B. 10 complies in all regards with the United States Constitution.

> C. An Order pursuant to 28 U.S.C. §2201 declaring that S.B. 10 does not violate any provision of the Ohio Constitution or Ohio law, or in the alternative an Order certifying questions to the Ohio Supreme Court to address the issues arising under the Constitution and laws of the State of Ohio, including explicit declarations and/or certified questions regarding the following:
>
> i. S.B. 10 does not violate procedural due process as guaranteed by the Ohio Constitution;
>
> ii. S.B. 10 does not violate substantive due process as guaranteed by the Ohio Constitution;
>
> iii. S.B. 10 does not violate equal protection guaranteed by the Ohio Constitution;
>
> iv. S.B. 10 does not violate the separation of powers as guaranteed by the Ohio Constitution;
>
> v. S.B. 10 does not violate the Ohio Constitution's prohibition on retroactive laws;
>
> vi. S.B. 10 does not violate the Ohio Constitution's prohibition on double jeopardy;
>
> vii. S.B. 10 does not violate inalienable rights as guaranteed by the Ohio Constitution;
>
> viii. S.B. 10 does not violate the single subject clause of the Ohio Constitution;
>
> ix. the enforcement or application of S.B. 10 does not constitute a breach of contract under Ohio law;
>
> x. S.B. 10 complies in all regards with the Constitution and laws of the State of Ohio.

Counterclaim at 11-12 (Doc. 77).

Plaintiffs argue that the Counterclaim Defendants have failed to state a cognizable cause of action under the Declaratory Judgment Act. Plaintiffs state that the Counterclaim Defendants have failed to allege any statutory basis for the exercise of the Court's jurisdiction. Plaintiffs

12

also argue that the Counterclaim Defendants lack standing to present any claim against the putative class because they have failed to allege any injury caused by plaintiffs.  The Court addresses the jurisdictional challenge first.

### *Lack of Subject Matter Jurisdiction*

The Counterclaim asserts only a single basis for subject matter jurisdiction:  the Declaratory Judgment Act.  The Declaratory Judgment Act provides in relevant part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

Plaintiffs, in their motion to dismiss, correctly state that the Declaratory Judgment Act does not create an independent basis for jurisdiction.  *Heydon v. MediaOne of Southeast Michigan*, *Inc.*, 327 F.3d 466, 470 (6th Cir. 2003).  Rather, it permits courts the discretion to fashion a remedy.  *Id.*  Notably, if the Court has jurisdiction over a request for declaratory judgment relief, it is still within the sound discretion of the Court to decline to exercise that jurisdiction.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

The Counterclaim Defendants dispute none of this.  Instead, they now present several different bases for jurisdiction, which they failed to allege in their Counterclaim.  They argue that the Counterclaim presents a "federal question" in that it, at least in part, "arises under" the U.S. Constitution. The Counterclaim Defendants also argue that the Counterclaim is "compulsory" and that the Court has supplemental and/or ancillary jurisdiction over the claim because the Counterclaim is "so related to claims in the action within [the Court's] original

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. It is well-settled that the question of whether a claim "arises under" federal law must be determined by reference to the "well-pleaded complaint" rule. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citing *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983)). Under this rule, a case "arises under" federal law for purposes of § 1331 "when it is apparent from the face of the plaintiff's complaint either that the plaintiff's cause of action was created by federal law; or if the plaintiff's claim is based on state law, a substantial, disputed question of federal law is a necessary element of the state cause of action." *Michigan Southern Railroad Co. v. Branch & Joseph Counties Rail Users Association, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002) (citations omitted); *see also Franchise Tax Board*, 463 U.S. at 27-28 (jurisdiction exists under § 1331 in "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."). In other words, federal question jurisdiction does not exist where the only question of federal law arises from a defense to the complaint.

"Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court." *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 248

14

(1952). That is, "if the federal issue would inhere in the claim on the face of the complaint that would have been presented in a traditional damage or coercive action, then federal jurisdiction exists over the declaratory judgment action." 10A Charles Alan Wright *et al.*, Federal Practice and Procedure: Civil § 2767, at 744-45 (2d ed. 1983).

The parties dispute boils down to the reach of a decision by the United States Supreme Court. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983). In *Franchise Tax Board*, a California law permitted the state to collect unpaid state income taxes by levying on funds held in trust for the taxpayers under an ERISA-covered vacation benefit plan. The state tax board brought suit in state court against the benefit plan seeking a declaration that "defendants are legally obligated to honor all future levies by the Board." Defendant removed the case to federal court arguing that because the question involved an interpretation of ERISA and whether preemption by ERISA would prevent enforcement of the state law, a federal question was presented.

The Supreme Court held that the state declaratory judgment action did not "arise under" federal law stating, "federal courts do not have original jurisdiction, nor do they acquire jurisdiction on removal, when a federal question is presented by a complaint for a state declaratory judgment but [the federal question arises only as a defense to a state-created action]." Essentially, the court was merely restating the "well-pleaded complaint" rule. However, the court seemingly went further when it stated that even if the defendant benefit plan could have sought injunctive relief under the federal law - ERISA - a preemptive declaratory judgment suit by the State still does not "arise under" federal law:

> There are good reasons why the federal courts should not entertain
> suits by the States to declare the validity of their regulations despite

15

> possibly conflicting federal law. States are not significantly prejudiced by an inability to come to federal court for a declaratory judgment in advance of a possible injunctive suit by a person subject to federal regulation. They have a variety of means by which they can enforce their own laws in their own courts, and they do not suffer if the [federal] questions such enforcement may raise are tested there …. The situation presented by a State's suit for a declaration of the validity of state law is sufficiently removed from the spirit of necessity and careful limitation of district court jurisdiction ... to convince us that, until Congress informs us otherwise, such a suit is not within the original jurisdiction of the United States district courts. Accordingly, the same suit brought originally in state court is not removable either.

*Franchise Tax Board*, 463 U.S. at 21-22.

The Counterclaim Defendants argue that *Franchise Tax Board* applies only to suits initiated by the state and does not apply to counterclaims. They argue that this Court has supplemental jurisdiction over the Counterclaim because it is compulsory. Compulsory counterclaims are those that "arise out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1). Supplemental jurisdiction exists over these claims if they are "so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Plaintiffs, on the other hand, argue that *Franchise Tax Board* should apply to at least that portion of the Counterclaim that exceeds the scope of their Complaint. Plaintiffs concede that in the process of adjudicating their Complaint the Court may - if it finds for defendants on the merits - issue a declaration that the three sections of the AWA challenged by plaintiffs do not violate plaintiffs' procedural due process rights.[3] However, plaintiffs contend that the Court

---

[3] Plaintiffs, however, state that there is no need to retain jurisdiction

does not have jurisdiction to consider the full breadth of the Counterclaim - that is the constitutionality and validity on all grounds of the entire AWA.  Plaintiffs argue that those portions of the Counterclaim that exceed the scope of the original Complaint should be treated as "original" claims initiated by the Counterclaim Defendants.  Under *Franchise Tax Board*, then, plaintiffs contend that the Court has no jurisdiction.  Alternatively, plaintiffs argue that the Counterclaim is not compulsory in that it far exceeds the scope of plaintiffs' Complaint.  That is, the Counterclaim is not "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

The Court agrees with plaintiffs that it does not have subject matter jurisdiction over the Counterclaim.  The weight of authority suggests that *Franchise Tax Board* is not limited to questions of whether a state law is preempted by or invalid under a federal law - the rule applies equally when a State seeks a declaration that its law is not invalid under the United States Constitution.  *Missouri ex rel. Missouri Highway Transp. Comm'n v. Cuffley*, 112 F.3d 1332, 1336 (8th Cir. 1997) (no jurisdiction over a declaratory judgment action by the state for a declaration that a denial of the KKK's "adopt-a-highway" application would not violate the group's First Amendment rights); *see also Carlisle Twp. Bd. of Trs. v. Hynolds LLC*, 303 F.

---

over even that narrow portion of the Counterclaim because it merely "mirrors" the Complaint.  *See Pettrey v. Enterprise Title Agency, Inc.*, 2006 U.S. Dist. LEXIS 83957 (N.D. Ohio Nov. 17, 2006) (applying the "mirror image rule" in dismissing declaratory judgment counterclaims in a § 1983 suit because where "there is a complete identity of factual and legal issues ... no useful purpose would be served by retaining defendants' declaratory judgment counterclaims.").

Supp. 2d 873 (N.D. Ohio 2004) (plaintiff, a township, brought the declaratory judgment action seeking a declaration that a township ordinance regulating sexually oriented businesses was constitutional under the federal and Ohio Constitutions); *International Soc. for Krishna Consciousness, Inc. v. Los Angeles*, 611 F. Supp. 315 (C.D. Cal. 1984) (no jurisdiction over action by city for declaration that resolution banning certain activities in airport was constitutional); 13B Charles Alan Wright *et al.*, Federal Practice and Procedure: Jurisdiction § 3566, at 97 (2d ed. 1984) ("there is no federal jurisdiction [over] a suit by a state for a declaration of the validity of state law even though the party being sued by the state could have raised the same issue in federal court in an action for coercive relief").  By this reasoning, the Counterclaim does not "arise under" the U.S. Constitution.

For the foregoing reasons, the Court grants plaintiffs' motions to dismiss.[4]

**CONCLUSION**

For the foregoing reasons, defendants' motions for judgment on the pleadings are GRANTED and plaintiffs' motions to dismiss are GRANTED.

---

[4] Because the Court finds it does not have subject matter jurisdiction for the reasons stated above, the Court will not consider plaintiffs' alternate argument that the Counterclaim Defendants have not established that they have standing.  It suffices to note that the Counterclaim Defendants do not put forth much argument in support of their standing before the Court.  They fail to even acknowledge the three-part test for constitutional standing:  injury, causation, and redressability.  Instead, they merely assert they are the "proper parties" because plaintiffs sued them.

IT IS SO ORDERED.

        /s/ Patricia A. Gaughan_____
        PATRICIA A. GAUGHAN
        United States District Judge

Dated: 8/11/08